# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES E. SCOTT, STUART SCOTT, JOHN
SCOTT, WILLIAM SCOTT, MARY
KATHERINE LAMB, ANNE SCOTT, and
MARY B. SCOTT,

UNPUBLISHED
April 19, 2018

Petitioner-Appellants,

v

No. 339007
Tax Tribunal
LC No. 15-003121-TT

CITY OF SOUTH HAVEN,

Respondent-Appellee.

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Petitioners appeal as of right the Tax Tribunal's opinion and order denying petitioners' motion for summary disposition and granting respondent's motion for summary disposition. We affirm.

The facts of this case are generally uncontested. In 2008, petitioners' mother, Joan Scott, formed the J. Scott Family LLC (the Scott LLC) and conveyed the property from herself to the Scott LLC. In 2013, the Scott LLC conveyed the property back to Joan. Neither the Scott LLC nor Joan were ever involved in a trade or business relative to the property. In January 2014, Joan conveyed the property to petitioners while reserving for herself a life estate. Later in January 2014, Joan passed away. Respondent subsequently uncapped the taxable value of the property for the 2015 tax year.

Petitioners contested this uncapping in the Tax Tribunal. Petitioners argued that the 2013 and 2014 transfers did not constitute "transfers of ownership" under MCL 211.27a(6) because they were both covered by exceptions in MCL 211.27a(7). In response, respondent's argued that both the 2013 and 2014 transfers constituted uncapping events. After the parties filed competing motions for summary disposition, the Tax Tribunal ruled in respondent's favor, holding that both the 2013 and 2014 were transfers not subject to exception in MCL 211.27a(7) and, as a result, uncapping was proper.

On appeal, petitioners argue that the tribunal improperly granted respondent's motion for summary disposition, and that it should have granted petitioners' motion for summary disposition. We disagree. "If the facts are not disputed and fraud is not alleged, our review is

-1-

limited to whether the Tax Tribunal made an error of law or adopted a wrong principle." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527-528; 817 NW2d 548 (2012). "But when statutory interpretation is involved, this Court reviews the tribunal's decision de novo." *Wexford Med Group v City of Cadillac*, 474 Mich 192, 202; 713 NW2d 734 (2006). "The Court reviews de novo an appeal from an order granting a motion for summary disposition." *Sturrus v Dep't of Treasury*, 292 Mich App 639, 645-646; 809 NW2d 208 (2011). "A motion for summary disposition pursuant to MCR 2.116(C)(10) should be granted when the moving party is entitled to judgment as a matter of law because there is no genuine issue of material fact." *Id.* at 646.

Pursuant to MCL 211.27a(2), the taxable value of property is limited—or "capped"—to increasing the lesser of 5% or the inflation rate, regardless of the property's current market price. However, when there is a "transfer of ownership," the property's taxable value is "uncapped" and is taxed the following year at its state equalized valuation, MCL 211.27a(3), which is generally 50% of the property's true cash value, MCL 211.27a(1). MCL 211.27a(6) defines "transfer of ownership" to mean "the conveyance of title to or a present interest in property," and includes "[a] conveyance by deed." MCL 211.27a(6)(a). However, MCL 211.27a(7) lists exceptions to conveyances that would otherwise constitute "transfers of ownership." On appeal, petitioners do not argue that the 2013 and 2014 transactions did not fall under MCL 211.27a(6). Rather, petitioners contend on appeal that the transfers constituted exceptions to "transfer of ownership" in MCL 211.27a(7).[1]

In order to prevail in their argument, petitioners must show that both the 2013 transfer from the Scott LLC to Joan and the 2014 transfer from Joan to petitioners reserving a life estate fell under one of the transfer of ownership exceptions in MCL 211.27a(7). First addressing the 2014 transfer, petitioners argue that it is exempt under MCL 211.27a(7)(t), which provides that a transfer does not constitute a "transfer of ownership" under the following circumstances:

> Beginning December 31, 2013 through December 30, 2014, a transfer of residential real property if the transferee is related to the transferor by blood or affinity to the first degree and the use of the residential real property does not change following the transfer.

The 2014 transfer would seem to fall under this section because petitioners are Joan's children. However, respondent argues that, because the 2014 transfer reserved a life estate for Joan, it was subject to MCL 211.27a(7)(c), which provides that a transfer does not constitute a "transfer of ownership" under the following circumstances:

---

[1] With regard to petitioners' argument that the tribunal ignored Const 1963, art 9, § 3, their argument is without merit. As recognized by the Michigan Supreme Court, "The Michigan Legislature was charged with determining the specifics needed to give effect to [Const 1963, art 9, § 3's] mandate." *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011). The Legislature did this through amendments to the General Property Tax Act in MCL 211.27a. See *id.* at 297. Accordingly, the Tax Tribunal properly focused its analysis on whether petitioners fell under an exception in MCL 211.27a(7) because that section gave effect to Const 1963, art 9, §3. See *id.*

Subject to subdivision (d), a transfer of that portion of property subject to a life estate or life lease retained by the transferor, *until expiration or termination of the life estate or life lease*. [Emphasis added.]

Respondent argues that once Joan's life estate expired, the property was no longer subject to an exemption and was, therefore, uncapped.

In support of its interpretation, respondent argues that, because the statutes conflict, MCL 211.27a(7)(c) controls over subsection (7)(t) because subsection (7)(c) is more specific. See *People v Buehler*, 477 Mich 18, 26; 727 NW2d 127 (2007) ("When there is a conflict between statutes that are read *in para materia*, the more recent and more specific statute controls over the older and more general statute."). Respondent's argument has merit to the extent that the statutes appear to conflict: under MCL 211.27a(7)(c), the property is uncapped because the life estate expired, whereas under subsection (7)(t) the property is not uncapped because the transfer was to relatives of the first degree.[2] However, contrary to respondent's argument, neither statute is more specific than the other because neither is wholly encompassed by the other.[3]

However, because MCL 211.27a(7) is a tax exemption statute, *Mancuso*, 300 Mich App 1, 6; 831 NW2d 907 (2013), it is to be narrowly construed, *Wexford Med Group v City of Cadillac*, 474 Mich 192, 204; 713 NW2d 734 (2006) ("And where a tax exemption is sought, we recall that because tax exemptions upset the desirable balance achieved by equal taxation, they must be narrowly construed."). Without any indication that one of these sections controls over the other, a narrow construction of MCL 211.27a(7) supports the conclusion that the narrower exception—transfers reserving a life estate that uncap when the life estate expires or is terminated—controls. See *Mancuso*, 300 Mich App at 6.

This is further supported by the Legislature's amendment to MCL 211.27a adding subsection (7)(d). "[C]ourts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute." *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009).

MCL 211.27a(7)(d) was added after MCL 211.27a(7)(c) and subsection (t). See 2015 PA 243 (adding MCL 211.27a(7)(d)). MCL 211.27a(7)(d) provides in pertinent part that the following does not constitute a "transfer of ownership":

---

[2] This necessarily precludes petitioners' argument for "stacking" the provisions of MCL 211.27a(7). To avoid uncapping the property pursuant to MCL 211.27a(7)(t)—as petitioners suggest—would necessarily mean ignoring the uncapping required by MCL 211.27a(7)(c). Without some direction in the statute that subsection (7)(c) is subject to (7)(t), there is simply no indication in the statute that one section controls over the other.

[3] For both subsections, there are overall classes of transfers, either transfers to first-degree relatives or transfers reserving a life estate, and then within those overall classes is a smaller overlapping class of transfers to first-degree relatives reserving a life estate.

Beginning December 31, 2014, a transfer of that portion of residential real property that had been subject to a life estate or life lease retained by the transferor resulting from expiration or termination of that life estate or life lease, if the transferee is the transferor's or transferor's spouse's mother, father, brother, sister, son, daughter, adopted son, adopted daughter, grandson, or granddaughter and the residential real property is not used for any commercial purpose following the transfer.

The addition of MCL 211.27a(7)(d) could be interpreted as an indication that the Legislature did not intend for the statute as originally written to permanently exempt transfers to first-degree relatives that also reserved a life estate. This would indicate that the Legislature intended for MCL 211.27a(7)(c), and not subsection (7)(t), to apply to property transferred to relatives reserving a life estate. As noted by the Tax Tribunal, MCL 211.27a(7)(d) would not have been necessary if transfers to relatives that reserved a life estate were intended to be encompassed by MCL 211.27a(7)(t).

This interpretation is further supported by the legislative analysis of 2015 PA 243—the act adding MCL 211.27a(7)(d). Although a legislative analysis is "a generally unpersuasive tool of statutory construction," *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001), it can "have probative value in certain, limited circumstances," *Kinder Morgan*, 277 Mich App at 170. 2015 PA 243 was introduced as House Bill 4930. The revised summary in the legislative analysis of the bill as introduced stated:

Generally speaking, the act currently provides that the transfer of property subject to a life estate or life lease not retained solely by the transferor of the property is a transfer of ownership that results in a "pop-up" of the taxable value of the property at the time of the transfer. If the property subject to the life estate or life lease is retained solely by the transferor, then the property's taxable value results in a "pop-up" at the expiration of the life estate or life lease *no matter who is the transferee*. [Emphasis added.]

Although not dispositive, this legislative analysis provides persuasive evidence that the Legislature did not originally intend for MCL 211.27a(7)(t) to encompass transfers to relatives that reserved a life estate, and that such transfers were wholly encompassed by MCL 211.27a(7)(c).

Lastly, this conclusion was the conclusion reached by the Tax Tribunal. "[T]his Court will generally defer to the Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing[.]" *Moshier v Whitewater Twp*, 277 Mich App 403, 409; 745 NW2d 523 (2007) (quotation marks and citation omitted). However, "these rules do not permit a strained construction of the Legislature's intent[.]" *Id*. (quotation marks and citation omitted). Here, the tribunal's conclusion does not appear to strain the Legislature's intent in any way. In fact, it appears that the tribunal's interpretation is the only one reasonably supported: MCL 211.27a(7)(c) should control over subsection (7)(t) based on the fact that exemptions are to be narrowly construed, the Legislature's later addition of MCL 211.27a(7)(d) to explicitly exempt transfers to family members reserving a life estate from MCL 211.27a(6), and the legislative analysis for 2015 PA 243.

-4-

Petitioners argue that, even if MCL 211.27a(7)(c) controls the outcome of this case instead of (7)(t), the 2014 transfer should be governed by MCL 211.27a(7)(d). MCL 211.27a(7)(c) is "[s]ubject to subdivision (d)." However, MCL 211.27a(7)(d) applies "[b]eginning December 31, 2014," and the subject transfer in this case occurred in January 2014. Petitioners argue that the MCL 211.27a(7)(d) applied to the January 2014 transaction based on § 1 of the enacting statute of 2015 PA 243, which states:

> Section 27a(7)(d) of the general property tax act, 1893 PA 206, MCL 211.27a, as added by this amendatory act, is retroactive and is effective for taxes levied after December 31, 2014.

Petitioners argue that since the enacting statute states that MCL 211.27a(7)(d) is "effective for taxes levied after December 31, 2014," and the taxes that uncapped the property were levied in the 2015 tax year, MCL 211.27a(7)(d) was in effect and applied.

The problem with petitioners' argument is that the language of MCL 211.27a(7)(d) begins with "[b]eginning December 31, 2014." Read in context, the "beginning December 31, 2014" language relates to when the relevant transfer occurs: "[t]ransfer of ownership does not include . . . [b]eginning December 31, 2014, a transfer . . . of residential property" to select relatives that reserves a life estate for the transferor. MCL 211.27a(7)(d). By its plain language, MCL 211.27a(7)(d) is only applicable to *transfers* occurring on or after December 31, 2014. The transfer in this case took place in January 2014. Accordingly, MCL 211.27a(7)(d) could not have been applicable to that transfer.

Petitioners argue that

> it is clear why the Legislature chose to include the introductory phase that includes December 31 in Section 7(d) – it perfectly understood that December 31 is the date for determining a property's taxable value, and that making the statute retroactive to December 31, 2014 would reach *all taxes levied* for tax year 2015.

The problem with this argument is that it only gives effect to the enacting section. Petitioners' proposed interpretation would necessarily render the phrase "[b]eginning December 31, 2014" in MCL 211.27a(7)(d) surplusage because MCL 211.27a(7)(d) would have the same meaning with or without that language. See *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002) ("Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory."). Moreover, petitioners' argument improperly focuses on when the taxes are levied, instead of the focus of MCL 211.27a(7)(d): when the transfer occurred.[4] Based on the foregoing,

---

[4] We recognize that, under this interpretation, the retroactivity of MCL 211.27a(7)(d) only applies to a single day: December 31, 2014. However, we are guided by the principle that, when statutes conflict, courts "should, so far as reasonably possible," construe the statutes "in harmony with each other, so as to give force and effect to each." *Int'l Business Machines Corp v Dep't of*

the tribunal properly determined that MCL 211.27a(7)(c), and not subsection (7)(d), controlled the outcome of this case. Accordingly, upon Joan's death in January 2014, respondent properly uncapped petitioners' property in tax year 2015.

Likewise, respondent properly uncapped the property value based on the 2013 transfer. Petitioners contend that the 2013 transfer was not a "transfer of ownership" pursuant to MCL 211.27a(7)(m), which states in relevant part that the following is not considered a "transfer of ownership":

> A transfer of real property or other ownership interests among corporations, partnerships, limited liability companies, limited liability partnerships, or other legal entities if the entities involved are commonly controlled.

The Tax Tribunal found that petitioners did not qualify for this exception because, pursuant to the "commonly controlled" language of MCL 211.27a(7)(m), there was a business-activity requirement to qualify for this exception.

No binding authority has found a business-activity requirement for MCL 211.27a(7)(m), so this Court must engage in statutory interpretation to determine whether "commonly controlled" as used in MCL 211.27a(7)(m) encompasses a business-activity requirement.[5] "This Court's primary task in construing a statute is to discern and give effect to the intent of the Legislature." *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). "To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language." *Lash v City of Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). "The words contained in the statute provide us with the most reliable evidence of the Legislature's intent." *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 163; 744 NW2d 184 (2007

"Commonly controlled" is not defined in the relevant statute. Instead, the tribunal found a business-activity requirement for MCL 211.27a(7)(m) based on STC Bulletin No 16 of 1995. In that bulletin, the STC instructed that "commonly controlled" would be defined pursuant to RAB 1989-48. Both parties acknowledge on appeal that the STC Guidelines do not have the force of law and are "merely explanatory." *Danse Corp v City of Madison Hts*, 466 Mich 175, 181; 644 NW2d 721 (2002).[6] However, we need not address if the tribunal properly read a

---

*Treasury*, 496 Mich 642, 652; 852 NW2d 865 (2014) (quotation marks and citation omitted). Our interpretation is the only reading that gives effect to both statutes.

[5] To the extent that petitioners argue that there is a "mirror image rule" for MCL 211.27a(7)(m), petitioners have cited no binding authority—or even persuasive authority—that sets forth such a rule, and we need not address that argument further. See *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008).

[6] Although petitioners concede that the STC guidelines are not binding, they contend that they were entitled to rely on them pursuant to *In re D'Amico*, 435 Mich 551; 460 NW2d 198 (1990). In that case, the Department of Treasury issued a ruling in 1977 that lottery winnings would not

business-activity requirement into the statute. Assuming, without deciding, that the tribunal properly relied on STC Bulletin No 16 of 1995, and consequently RAB 1989-48, then it properly read a business-activity requirement into MCL 211.27a(7)(m) and uncapped petitioners' property. See RAB 1989-48 (limiting "entities under common control" to entities conducting business or engaging in a business activity). In the alternative, were we to agree with petitioners that the tribunal should not have relied on STC Bulletin No 16 of 1995 and RAB 1989-48, petitioners appeal would fail because Joan would not be considered a "legal entity" under the statute.

The tribunal found that Joan was a legal entity in part based on RAB 1989-48's inclusion of "individuals" in its definition of "other legal entities." If RAB 1989-48 does not apply, as petitioners advocate, then we must look to the statute for a definition of "other legal entities." As stated the statute does not define "legal entity." "A court may consult dictionary definitions when terms are not expressly defined by a statute." *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998). "Because the term[] at issue [has] a 'unique legal meaning' and [is] located in a complicated statute on tax-appeal procedure, we use a legal dictionary as opposed to a lay dictionary." *Spartan Stores, Inc v City of Grand Rapids*, 307 Mich App 565, 575; 861 NW2d 347 (2014), citing *People v. Thompson*, 477 Mich; 146, 151-152; 730 NW2d 708 (2007). *Black's Law Dictionary* (10th ed 2014) defines "legal entity" as "[a] body, *other than a natural person*, that can function legally, sue or be sued, and make decisions through agents." (Emphasis added). Based on this definition, Joan, as a natural person, clearly does not constitute a "legal entity." But this does not end our inquiry.

The Tax Tribunal expressed concern with not considering Joan a "legal entity" in MCL 211.27a(7)(m) because "[t]he exclusion of 'a natural person' [would be] inconsistent with the fact that a natural person or individual can engage in business or trade activities (i.e., a sole proprietorship)." The problem with this reasoning is that, regardless of whether there is a

---

be subject to an inheritance tax in Michigan, and then on September 14, 1983, announced that it would no longer adhere to that ruling. *Id*. at 558-559. After the 1983 announcement, the department sought to collect an inheritance tax on an individual for lottery winnings inherited in 1981. *Id*. at 553. The Michigan Supreme Court held:

> The Department of Treasury should be held to be bound by the first, contemporaneous construction by the state, at least with regard to the estates of persons who purchased lottery tickets before September 14, 1983, when the Treasury advised inheritance tax field examiners of a "new development." [*Id*. at 564.]

Unlike in *In re D'Amico*, petitioners in this case are attempting to hold the Tax Tribunal to the guidelines issued by the STC, not the tribunal's own ruling. Only the Tax Tribunal, and not the STC, is the final agency for the administration of property tax laws. MCL 205.753(1). *In re D'Amico* is inapplicable to the facts of this case, and petitioners were not entitled to rely on the STC Guidelines. See *Danse Corp*, 466 Mich at 181.

business-activity requirement, petitioners never claimed that Joan was engaged in business or trade. In order for a person to constitute a sole proprietorship, by the very definition of the term, the person must be engaged in business or trade. See *Black's Law Dictionary* (10th ed 2014) (defining "sole proprietorship" as "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity" or "[o]wnership of such a business"). Thus, excluding "natural persons" from MCL 211.27a(7)(m) does not raise the concerns addressed by the tribunal; only excluding "natural persons" claiming to be a sole proprietorship (i.e., conducting business) would trigger such concerns.

Further, interpreting "other legal entities" to exclude natural persons not claiming to be a sole proprietorship is consistent with the canon of ejusdem generis. "When a statute uses a general term followed by specific examples included within the general term . . . the canon of statutory construction ejusdem generis applies." *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718; 629 NW2d 915 (2001). Under this canon, "where a general term follows a series of specific terms, the general term is interpreted to include only things of the same kind, class, character, or nature as those specifically enumerated." *Neal v Wilkes*, 470 Mich 661, 669; 685 NW2d 648 (2004) (quotation marks and citation omitted). Employing this doctrine to the present case, "other legal entities" must be "of the same class, character, or nature," *id.*, as "corporations, partnerships, limited liability companies, [and] limited liability partnerships." MCL 211.27a(7)(m). All of these listed entities conduct business or trade. Thus, a sole proprietorship would be encompassed by this statute, but a natural person not conducting business—and therefore not constituting a sole proprietorship—would not be included because it is not of the same class, character, or nature as all of the other business-conducting entities. See *Neal*, 470 Mich at 669. Accordingly, were we to accept petitioners' argument that RAB 1989-48 does not apply to MCL 211.27a(7)(m), petitioners' argument nonetheless fails because Joan would not constitute a "legal entity" for purposes of MCL 211.27a(7)(m), MCL 211.27a(7)(m) would not apply to the facts of this case, and the tribunal would have properly determined that the 2013 transfer constituted an uncapping event. [7]

Because the tribunal properly determined that respondent uncapped petitioners' property value for the 2015 tax year, the tribunal did not err by granting respondent's motion for summary disposition and denying petitioners' motion for summary disposition.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens

---

[7] Under this analysis, affirming the tribunal would still be proper because it would have reached the correct result, albeit for the wrong reasons. See *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).